<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVID J. KHAWAM,<br><br>       Plaintiff,<br><br>  v.<br><br>ELLIS ALLEN, *et al.*,<br><br>       Defendants. | Civil Action No. 23-22465 (GC) (JTQ)<br><br><u>**OPINION**</u> |

<u>**CASTNER, District Judge**</u>

**THIS MATTER** comes before the Court upon Defendants Ellis Allen, Michael McCormick, and Alicia Williams's Motion to Dismiss, (ECF No. 31), *pro se* Plaintiff David Khawam's Third Amended Complaint (TAC). (ECF No. 17.) Plaintiff opposed the Motion, (ECF No. 32), and Defendants replied. (ECF No. 38.) The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

I.    <u>**BACKGROUND**</u>[1]

On March 2, 2021, the Supreme Court of New Jersey, upon Plaintiff's consent, disbarred Plaintiff, "permanently restrain[ing] and enjoin[ing]" him from practicing law in the State, "restrain[ing]" all funds maintained by Plaintiff from disbursement, transferring those funds to the Clerk of the Superior Court for deposit in the Superior Court Trust Fund, and ordering Plaintiff to

---

[1]    On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

reimburse the Disciplinary Oversight Committee "for appropriate administrative costs and actual expenses incurred in the prosecution" of the action.[2]  (ECF No. 31-2 at 30.)[3]

### A.  The New Jersey Lawyers' Fund for Client Protection

The New Jersey Court Rules require the Supreme Court of New Jersey to appoint "seven trustees" to "administer and operate" the New Jersey Lawyers' Fund for Client Protection (the Fund).  N.J. Ct. R. 1:28-1(a).  The Fund's purpose is the "reimbursement . . . of losses caused by the dishonest conduct of members of the bar of [New Jersey]."  *Id*.  Five trustees must be members of the New Jersey bar, and two members must not be attorneys.  N.J. Ct. R. 1:28-1(b).  The Fund's trustees are required to adopt rules and regulations, "governing the administration of the Fund, the procedures for the presentation, consideration and payment of claims, and the exercise of their investment powers."  N.J. Ct. R. 1:28-1(d).  The trustees serve without compensation and are entitled to reimbursement from the Fund for "their expenses reasonably incurred in the performance of their duties."  N.J. Ct. R. 1:28-1(e).  The trustees may "employ and compensate consultants, agents, legal counsel and such other employees as they deem necessary and appropriate consistent with personnel policies of the judiciary."  N.J. Ct. R. 1:28-5(c).  "The Board of Trustees, Director and Counsel, Deputy Counsel, Secretary and all staff personnel shall be absolutely immune from suit, whether legal or equitable in nature, for any conduct in the performance of their official duties."  N.J. Ct. R. 1:28-1(f).

When determining whether to issue payment in a particular matter, trustees may consider "all claims resulting from the dishonest conduct of a member of the bar of this state."  N.J. Ct. R.

---

[2]    The Court takes judicial notice of the Supreme Court of New Jersey's Order disbarring Plaintiff as a matter of public record.  *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

[3]    Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

1:28-3(a). The attorney must have engaged in the conduct while a "practicing member of the Bar" of New Jersey or admitted *pro hac vice* in a pending matter in New Jersey. N.J. Ct. R. 1:28-3(a)(1). Generally, the claim must be filed "within one year of" the attorney's disbarment or the earliest of another event set forth in Rule 1:28-3(a)(2). N.J. Ct. R. 1:28-3(a)(3). However, the trustees "in their discretion" may extend this time limitation. N.J. Ct. R. 1:28-3(a)(3). The claim can be made "directly by or on behalf of the injured client or the client's personal representative." N.J. Ct. R. 1:28-3(a)(4). The trustees "in their sole discretion but on the affirmative vote of 4 of them . . . determine which eligible claims merit reimbursement from the Fund and the amount, time, manner, conditions and order of payment of reimbursement." N.J. Ct. R. 1:28-3(b).

The trustees, the Director of the Fund, or "an attorney designated to act on behalf of the trustees," after "determining that any person has knowledge or is in possession or custody of books, papers, documents or other objects relevant to the disposition of a claim, may issue a subpoena or a notice in lieu of subpoena in the name of the Clerk of the Superior Court." N.J. Ct. R. 1:28-6(a). Subpoenas must be served "in the manner prescribed by R. 1:9," except when serving "an attorney who is a witness or a party." *Id*. In that case, service may be effectuated by "certified mail" and "simultaneously by first class mail." *Id*.

In general, "[a]ll proceedings conducted and records made or maintained by the Fund in connection with the filing or consideration of claims shall be confidential and shall not be disclosed." N.J. Ct. R. 1:28-9(a). However, "[o]nce a claim has been approved for payment, the Fund may, upon written request, make available the following information": (A) name and address according to Fund records of the respondent attorney, (B) name and city of residence of the claimant, (C) the amount claimed, (D) the amount awarded, and (E) a summary of the factual basis for the claim. N.J. Ct. R. 1:28-9(a)(1)(A)-(E). In addition, "nothing . . . shall preclude the release

of information to the respondent and claimant or their attorneys or to the authorities specified in R. 1:28-3(a)(5)."  N.J. Ct. R. 1:28-9(a)(2).

### B. Allegations Regarding the Fund's Reimbursement of Plaintiff's Clients

Plaintiff alleges that, since his disbarment, Defendants have "weaponize[d]" the law and "target[ed]" him by "fishing" for and "paying" cases that were "well outside one (1) year of disbarment" to "harass," "assault," and "bury" Plaintiff for "standing up against them."  (ECF No. 17 ¶¶ 50, 78-81, 100, 118.)  Plaintiff alleges that the Fund is "secretive" regarding "who owns the debt, who is suing you, and who is investigating you, allegedly suing under fictitious names or on behalf of the individual owed the debt.  (*Id*. ¶ 36.)  Plaintiff references several specific cases in which "Defendant"[4] allegedly violated his "due process and civil rights."  (*Id*. ¶¶ 90-95.)  He claims that in these cases, "Defendant" did not give Plaintiff the right to defend himself, did not share "their" investigations with him, did not tell him about hearing dates, and did not give him the right to counsel.  (*Id*. ¶¶ 84-87.)

Plaintiff provides detailed allegations regarding only one such case, "Estate of Vonderlieth v. Khawam" or "NJ State Docket Burl-L-0621-23."  (*Id*. ¶¶ 101, 113.)  In that case, Plaintiff claims that Defendant Ellis Allen, who investigated the claim, "convinced a party" that Plaintiff had forged "her" name and "had her sign an affidavit."  (*Id*. ¶ 102.)  Plaintiff does not identify in the TAC the "party" to which he is referring.  He claims that Vonderlieth's executor pursued litigation against him based on this alleged affidavit.  (*Id*. ¶ 103.)  Plaintiff asserts that Vonderlieth's counsel

---

[4]     Repeatedly throughout the TAC, Plaintiff refers to a single "Defendant."  (*E.g.*, ECF No. 17 ¶¶ 6, 16, 30, 39, 46-47, 78, 82-94, 100, 110.)  In most of these instances, it is not clear to the Court who, in fact, Plaintiff is referencing.  However, the Court surmises from the context of these allegations that "Defendant" refers to the Fund.  The Fund itself was originally a defendant in this matter, but Plaintiff voluntarily dismissed it on February 23, 2024.  (ECF Nos. 1, 11, 14.)

stated that the "only reason he had filed the claim was to hold the statute of limitation because the Defendant was going to pay them." (*Id*. ¶ 105.)

Plaintiff claims that in February 2024, Defendant Alicia Williams sought to intervene in the Vonderlieth case. (*Id*. ¶ 113.) Plaintiff opposed Williams's intervention because the estate was already represented and "insurance was involved." (*Id*. ¶ 114.) According to Plaintiff, he acted as a "Guardian," not an attorney in the matter underlying the Vonderlieth claim. (*Id*. ¶ 115.) Yet, despite knowing his relationship to the client, Williams allegedly stated to the court, "I remember reading something that he was paid as an attorney." (*Id*. (internal quotation marks omitted).) Almost a year "after the claim to Defendant," Plaintiff asserts that the "defendant" decided to pay Vonderlieth's estate, despite "litigation and insurance." (*Id*. ¶ 106.) Defendant Michael McCormick allegedly sent Plaintiff a letter advising him of the award and requesting that Plaintiff "contact" him to "settle the claim . . . even though Defendant was fully aware of the litigation and paid the claim." (*Id*. ¶ 107.)

According to Plaintiff, he was once represented by counsel, but his attorney, Robert Barth, passed away in February 2023. (*Id*. ¶¶ 51-52.) Plaintiff alleges that Barth had all of his records and had taken over his practice prior to Plaintiff's disbarment. (*Id*. ¶¶ 53-54.) In April 2023, Plaintiff asserts that "Defendant" filed an order to show cause in a state court matter (Docket No. CAM-L-000993-23), claiming that Plaintiff was "using" Barth's files. (*Id*. ¶ 55.) Plaintiff alleges that McCormick knew that Plaintiff had turned over all of his files to William Cook, the trustee of Barth's estate. (*Id*. ¶¶ 56-57.) Cook allegedly took possession of Plaintiff's files and called "every client," asking if they wanted their files back. (*Id*. ¶ 58.) According to Plaintiff, Cook, acting "on behalf of" and at the "direction[]" of "Defendant," asked every client whether Plaintiff took advantage of them and whether Plaintiff owed them money. (*Id*. ¶¶ 59-61.) Plaintiff claimed that

if a client responded "yes" or "maybe" then "they" assisted the client in filing a claim against Plaintiff, "regardless of the basis of the claim" or "the age of the claim." (*Id*. ¶¶ 62-63.) Cook would then allegedly have the client "sign documents" that "they were not directed by the Fund to file [a] claim." (*Id*. ¶ 64.) Plaintiff alleges that Defendants are in possession of Plaintiff's client files through Cook and have refused to return them to Plaintiff. (*Id*. ¶ 109.) Because Defendants have his files, Plaintiff claims that Defendants have an unfair advantage in prosecuting the claims against him. (*Id*. ¶ 110.)

McCormick allegedly enlisted Allen to investigate the claims pursued by Plaintiff's clients as well as matters about which no one had complained. (*Id*. ¶¶ 65-66.) On August 26, 2021, Allen entered Plaintiff's office at 600 South White Horse Pike in Audubon, New Jersey, while he was not present. (*Id*. ¶¶ 6-8.) According to Plaintiff, Allen announced to the attorneys and staff at the office that he was there from the "Supreme Court" to see Plaintiff regarding an investigation. (*Id*. ¶¶ 9-10, 18.) Plaintiff claims that the August 2021 incident was not Allen's first time conducting himself in this manner and that he had done so "numerous times since 2021 in the investigation and collection of [Plaintiff's] alleged debts," the validity of which Plaintiff claims that he has disputed "over 20 times." (*Id*. ¶¶ 12-13, 37.) Plaintiff alleges that when Allen arrived at his office in August 2021, the attorneys and staff present were "frightened" and informed him that Plaintiff was not present. (*Id*. ¶¶ 11, 19.)

He claims that Allen "misleads," "bull[ies]," and "intimidate[s]" people by telling them that he is from the Supreme Court, "flash[ing] a badge" and "coerc[ing]" them to speak with him and answer his questions out of fear of "reprisal," "unintended consequences," or "trouble with the law." (*Id*. ¶¶ 14-17, 67-68, 70.) According to Plaintiff, Allen "weaponizes" his position with the Fund to collect debts on its behalf. (*Id*. ¶¶ 16-17.) He allegedly informs the people that he

interviews that they cannot speak with Plaintiff, that Plaintiff "took advantage of them," and that Plaintiff "robbed them . . . [and] others." (*Id*. ¶¶ 16-17, 69-70, 72-74 (internal quotation marks omitted).)

On August 26, 2021, Allen allegedly asked to see the individual offices of the attorneys present and then "headed upstairs and tried a locked door," which was the door to Plaintiff's office. (*Id*. ¶¶ 19-22.) Plaintiff claims that Allen proceeded to "force" the door open to Plaintiff's office, taking pictures of his office and its contents. (*Id*. ¶ 23.) When informed that he did not have permission to be in Plaintiff's office, Allen allegedly stated, "No matter, when I find out where the money is Mr. Khawam is going to Federal Prison." (*Id*. ¶¶ 24-25.) On September 9, 2021, Plaintiff filed a police report against Allen but was allegedly informed that he could not do so because Allen was immune from suit under New Jersey Court Rule 1:28-1(f) and he would need to seek permission from the Supreme Court to file a criminal complaint against Allen. (*Id*. ¶¶ 26-28.)

Plaintiff claims that Allen and the Fund were informed that Allen was not permitted on any of Plaintiff's properties. (*Id*. ¶¶ 29-30.) Plaintiff does not allege who informed Allen and the Fund of Allen's alleged lack of permission. Nor does Plaintiff explain the reason for those alleged communications. Plaintiff asserts that, despite the alleged warning, Allen "trespassed" onto Plaintiff's property to serve him with papers on several occasions and allegedly "went through" Plaintiff's mailbox. (*Id*. ¶¶ 31-32.) Plaintiff alleges that Allen also went to Plaintiff's home and questioned Plaintiff's 14-year-old daughter without an adult present, frightening her in the process and making her believe that Plaintiff would be arrested. (*Id*. ¶ 33.) Allen then allegedly requested police assistance to serve Plaintiff with a complaint, stating that he was from the Supreme Court. (*Id*. ¶ 35.) Plaintiff alleges that Defendants avoid personal service by leaving letters in a mailbox. (*Id*. ¶ 38.)

7

Plaintiff also alleges that McCormick engaged in misconduct on behalf of the Fund. He claims that he "purposely" used "wrong names on captions and on subpoenas to misguide" him and other "defendants." (*Id*. ¶¶ 40-41.) In addition, Plaintiff alleges that McCormick would not allow the release of "frozen and illegally converted funds belonging to Plaintiff." (*Id*. ¶ 43.) Plaintiff claims that some of these funds were "obviously COVID relief funds," and he had to file a motion with the Supreme Court to get them released, which allegedly took over a year. (*Id*. ¶¶ 44-45.) Plaintiff alleges that these funds were also comprised of "obviously unemployment funds" and "obviously tax return funds." (*Id*. ¶¶ 46-47.) Although McCormick allegedly agreed to the release of those funds, Plaintiff claims that they were never released. (*Id*. ¶ 48.)

Based on these allegations, Plaintiff pursues a single cause of action under 42 U.S.C. § 1983, claiming that Defendants Allen, McCormick, and Williams have violated his "civil rights and liberties," which include his rights to (1) privacy, (2) free speech under the First Amendment, (3) freedom from cruel and unusual punishment, (4) due process under the Fifth Amendment, (5) pursuit of happiness, (6) liberty, (7) fair process, (8) equal application of the law, (9) freedom from unreasonable searches and seizures under the Fourth Amendment, and (10) a fair trial under the Fifth and Fourteenth Amendments. (*Id*. ¶¶ 126-127.) He seeks $81 million in actual, punitive, and compensatory damages as well as "emotional damages" for pain and suffering. (*Id*. at 23.)

### C.  Prior Federal Litigation[5] and Procedural History

On May 11, 2023, Plaintiff removed an action brought against him by Trustees of the Fund from the Superior Court of New Jersey, Law Division, Mercer County (Docket No. MER-L-000580-23). (*Trustees of the N.J. Lawyers' Fund for Client Protection v. Khawam*, Civ. No. 23-2580, ECF No. 1.) In its complaint, the Trustees alleged that Plaintiff "failed to render legal

---

[5]    The Court takes judicial notice of Plaintiff's prior federal litigation as that case and its filings are a matter of public record. *See Mayer*, 605 F.3d at 230.

services agreed, failed to refund money owed, converted clients' funds, failed to perform on contracts for legal services, and breached his fiduciary duties." (*Khawam*, Civ. No. 23-2580, ECF No. 27 at 2.)  In that case, Plaintiff brought third party claims against a former client's estate and the Fund, alleging violations of the Fair Debt Collection Practices Act and his civil rights under § 1983.  (*Id*. at 2.)  Two weeks later, Plaintiff removed the case to this Court on the basis of federal question jurisdiction.  (*Id*.)  The Fund subsequently sought remand.  (*Id*. at 3.)

On October 19, 2023, this Court remanded the case, reasoning that the complaint contained "no cause of action that arose under federal law and did not establish that the parties were citizens of different states." (*Id*.)  The Court held that Plaintiff's third-party complaint could not form the basis for removal and, therefore, it lacked subject matter jurisdiction over the case.  (*Id*. at 4-5.)

About a month later, on November 16, 2023, Plaintiff, proceeding *pro se*, filed the original Complaint in this action against the Fund.  (ECF No. 1.)  Plaintiff subsequently filed an amended complaint.  (ECF No. 11.)  Upon the Court's direction, Plaintiff voluntarily dismissed the Fund on February 23, 2024.  (ECF No. 14.)  That same day, with the Court's leave, Plaintiff filed the Second Amended Complaint, substituting the Fund for Allen and McCormick.  (ECF No. 15.)  On May 9, 2024, Plaintiff filed the TAC, adding Williams as a defendant.  (ECF No. 17.)  The Court accepted, in the interests of justice, Plaintiff's TAC as the operative pleading in this case despite Plaintiff's failure to seek leave to file it.  (ECF No. 21.)

On October 15, 2024, Defendants moved to dismiss the TAC.  (ECF No. 31.)  Plaintiff opposed, and Defendants replied.  (ECF Nos. 32 & 38.)

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1): Lack of Subject-Matter Jurisdiction

Rule 12(b)(1) permits a defendant to move at any time to dismiss the complaint for lack of subject-matter jurisdiction on either facial or factual grounds. *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). In analyzing a facial challenge, a court "must only consider the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff." *Gould Elec. Inc.*, 220 F.3d at 176. "A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists." *Arosa Solar Energy Sys., Inc. v. Solar*, Civ. No. 18-1340, 2021 WL 1196405, at *2 (D.N.J. Mar. 30, 2021).

A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268. Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, Civ. No. 09-1743, 2010 WL 3908567, at *2 (D.N.J. Sep. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

**B.  Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted**

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'"  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dirs. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements."  *Wilson*, 57 F.4th at 140 (citing *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim."  *In re Plavix Mktg., Sales Practices & Products Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer*, 605 F.3d at 230.  A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III.  **DISCUSSION**

Defendants raise several grounds for dismissing the TAC. *First*, the Eleventh Amendment bars official capacity claims for monetary relief against Defendants because the Fund and its employees are arms of the State. *Second*, the Court should dismiss all official capacity claims against Defendants because they are not "persons" under § 1983. *Third*, Defendants are entitled to quasi-judicial immunity because they served as arms of the court and fulfilled a quasi-judicial role at the Supreme Court's request. *Fourth*, Plaintiff's claims are time-barred as they arose more than two years before he filed the original Complaint. *Finally*, Plaintiff's claims are barred by New Jersey's entire controversy doctrine because Plaintiff pursued the same claims against Defendants Allen and McCormick that he pursued against the Fund in his third-party complaint in the state court action and should have pursued his claims against Williams in that action. The Court will address each of these arguments in turn.

Before doing so, the Court notes that, although Plaintiff proceeds *pro se* in this action, as an attorney, he is a litigant with substantial legal training, and the Court, therefore, will not afford him the same leniency to which non-attorney *pro se* litigants are entitled. *See Turner v. N.J. State Police*, Civ. No. 08-5163, 2017 WL 1190917, at *7 (D.N.J. Mar. 29, 2017) ("Attorney *pro se* litigants are not accorded the same consideration as *pro se* litigants who lack substantial legal training."); *see also Kenny v. United States*, Civ. No. 08–3921, 2009 WL 276511, at *8 (D.N.J. Feb. 5, 2009) ("[T]his pro se Plaintiff is an attorney, and therefore, has substantial legal training and professional experience, undermining the rationale set forth by the Supreme Court in [*Haines v. Kerner*, 404 U.S. 519 (1972)].")); *see also Allen v. Aytch*, 535 F.2d 817, 821 n. 21 (3d Cir. 1976) (declining to construe liberally a complaint drafted by a third-year law student because he had "substantial legal training" even though he was not yet a member of the bar of the district court).

12

### A. Eleventh Amendment Sovereign Immunity

Defendants argue that sovereign immunity bars the claim against them. (ECF No. 31-1 at 23.) They assert that as arms of the State, Eleventh Amendment sovereign immunity shields them from official capacity claims. (*Id.* at 25-26.) Each state is a sovereign entity and, as provided by the Eleventh Amendment, not "amenable to the suit of an individual without its [express] consent." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996); *see also* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.").

Eleventh Amendment immunity also extends to arms of the State. *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016). To determine whether a state-affiliated entity is considered an arm of the state, the United States Court of Appeals for the Third Circuit requires courts to employ a three-factor test, first memorialized in its *en banc* decision in *Fitchik v. New Jersey Transit Rail Operations*, 873 F.3d 655, 659 (3d Cir. 1989). The three *Fitchik* factors are (1) the "funding factor"—whether the state treasury is legally responsible for an adverse judgment entered against the alleged arm of the State; (2) the "status under state law" factor—whether the entity is treated as an arm of the State under state case law and statutes; and (3) the "autonomy factor"—whether, based largely on the structure of its internal governance, the entity retains significant autonomy from state control. *Maliandi*, 845 F.3d at 83 (citing *id.*).

However, sovereign immunity under the Eleventh Amendment is "not absolute." *Koslow v. Commonw. of Pa.*, 302 F.3d 161, 168 (3d Cir. 2002). "Congress may authorize such a suit under its power to enforce the Fourteenth Amendment—an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance." *Id.* (internal quotation marks omitted). Congress must "both unequivocally intend[] to do so and act pursuant to a valid

grant of constitutional authority." *Id.* (internal quotation marks omitted). The Supreme Court of the United States has held that "Congress did not abrogate a state's Eleventh Amendment immunity in enacting § 1983." *Urella v. Pa. State Troopers Ass'n*, 628 F. Supp. 2d 600, 605 (E.D. Pa. 2008) (citing *Quern v. Jordan*, 440 U.S. 332, 338 (1979)). Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State . . . . The Eleventh Amendment bars such suits unless the State has waived its immunity." *Velez v. Fuentes*, Civ. No. 15-6939, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). Thus, "[n]either a state, nor its officials are 'persons' for the purposes of § 1983." *Id.*

Although the TAC does not specify whether Plaintiff sues Defendants in their official or individual capacities, Plaintiff does not challenge Defendants' argument on sovereign immunity over official capacity claims for damages. Instead, Plaintiff argues that the Eleventh Amendment does not bar his claim against Defendants in their individual capacities. (ECF No. 32 at 7-8.)[6] By

---

[6]     Plaintiff also argues that suits for prospective injunctive relief against state officials in their official capacities are permitted under *Ex Parte Young*. (ECF No. 32 at 8.) Yet, Plaintiff makes no such claim for relief. He seeks only damages in the TAC. (ECF No. 17 at 23.) Accordingly, the Court need not reach a decision about its jurisdiction over any such claim.

not opposing Defendants' official capacity arguments, Plaintiff waives any such claim for damages. *See K.J. v. J.P.D.*, Civ. No. 1:20-14177, 2022 WL 4596717, at *13 (D.N.J. Sept. 30, 2022) ("Plaintiff does not oppose this argument, and therefore waives his negligent supervision claim.") (citing *Hollister v. U.S. Postal Serv.*, 142 F. App'x 576, 577 (3d Cir. 2005)); *see also Turner*, 2017 WL 1190917, at *7 (finding that *pro se* attorneys do not receive the same leniency as non-attorney *pro se* litigants). Therefore, the Court finds that to the extent even asserted, Plaintiff has waived any claim against Defendants in their official capacities.

### B. Quasi-Judicial Immunity

Defendants argue that quasi-judicial immunity bars any claim against them in their individual capacities because Defendants were acting as arms of the Supreme Court. (ECF No. 31-1 at 29-33.) "Quasi-judicial immunity attaches to public officials whose roles are functionally comparable to that of a judge." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (internal quotation marks omitted). In determining whether a government actor was fulfilling a quasi-judicial role, courts "examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted" and "the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018) (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988)). The quasi-judicial immunity analysis focuses on the "general nature of the challenged action, without inquiry into such specifics as the [official's] motive or the correctness of his or her decision." *Gallas v. S. Ct. of Pa.*, 211 F.3d 760, 769 (3d Cir. 2000); *see also Keystone Redevelopment Partners, LLC*, 631 F.3d at 95 ("Thus, in evaluating whether quasi-judicial immunity grants immunity to a particular official, a court inquires into the official's job function, as opposed to the particular act of which the plaintiff complains." (internal quotation marks omitted)).

15

Like judicial immunity, quasi-judicial immunity is "absolute." *Keystone Redevelopment Partners, LLC*, 631 F.3d at 95. However, "[m]erely being part of the judicial function, even an extremely important part, will not automatically entitle one to quasi-judicial immunity." *Russell*, 905 F.3d at 247 (internal quotation marks omitted). "Even a judge will not enjoy immunity for nonjudicial actions, *i.e.*, actions not taken in [her] judicial capacity, or for judicial actions taken in the complete absence of all jurisdiction." *Id.* (internal quotation marks omitted). Absolute immunity is "strong medicine," and "the presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Russell*, 905 F.3d at 247-48 (quoting *Burns v. Reed*, 500 U.S. 478, 486-87 (1991)). "Absent overriding considerations of public policy, absolute immunity will not apply." *Id.* at 251. Thus, the "official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Id.*

The Third Circuit has adopted the six-factor test outlined in the Supreme Court's decision in *Butz v. Economou*, 438 U.S. 478 (1978), as the "touchstones of its quasi-judicial immunity inquiry." *See Keystone Redevelopment Partners, LLC*, 631 F.3d at 95; *Dotzel v. Ashbridge*, 438 F.3d 320, 325 (3d Cir. 2006). Those factors are (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of error on appeal. *Keystone Redevelopment Partners, LLC*, 631 F.3d at 95.

Courts have extended quasi-judicial immunity to protect a "range of judicial actors," including "those who make discretionary judgments functional[ly] comparab[le] to judges, such

16

as prosecutors and grand jurors"; "those who perform a somewhat different function in the trial process but whose participation . . . is equally indispensable, such as witnesses"; and "those who serve as arms of the court, . . . fulfill[ing] a quasi-judicial role at the court's request, such as guardians ad litem or court-appointed doctors." *See* Russell, 905 F.3d at 239.

Quasi-judicial immunity will not attach, however, to an official's "inappropriate" exercise of his or her job function. *See id*. In *Russell v. Richardson*, the mother of a teenage boy shot by a court marshal brought a § 1983 claim for excessive force as well as various state law claims. *Id.* at 244. The court marshal argued that he was entitled to quasi-judicial immunity because he acted to enforce the court's "Person in Need of Supervision" order against the teenage boy. *Id*. at 246-247. The Third Circuit disagreed, distinguishing "between claims based on the actions actually authorized by court order, which are barred by quasi-judicial immunity, and those based on the manner in which a court order is enforced, which are not." *Id*. at 248. The court "measure[d]" the court marshal's acts "against the yardstick of [his] functions," extending quasi-judicial immunity "only to acts consistent with the *appropriate* exercise of those functions." *Id*. at 251 (emphasis in original) (internal quotation marks omitted). Because the mother's claims were "premised on the alleged inappropriate exercise" of the court marshal's function, the Third Circuit affirmed the district court's denial of quasi-judicial immunity. *Id*.

Plaintiff does not appear to dispute that Defendants' job functions are entitled to quasi-judicial immunity. However, Defendants do not address the *Butz* factors in their briefing. Nor do they provide information regarding Defendants' specific job functions, arguing only that "their conduct on behalf of the Fund involv[ed] the investigation and litigation of claims made against Khawam by former clients after Khawam's disbarment for misappropriat[ion] of client funds" and that "their conduct related to their roles as officers of the Fund." (ECF No. 31-1 at 30-31.) Merely

being part of an entity like the Fund created by the Supreme Court does not automatically entitle Defendants to quasi-judicial immunity. *See Russell*, 905 F.3d at 247. Indeed, Defendants cite to no case extending quasi-judicial immunity to employees of the Fund,[7] and "any new extension of absolute immunity must be 'justified . . . by the *functions* it protects and serves, not by the person to whom it attaches.'" *Id.* at 250 (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)). Without more information regarding Defendants' specific job functions, the Court cannot assess whether those functions entitle Defendants to quasi-judicial immunity. Thus, Defendants have not yet met their burden to prove that such immunity shields them.

The Court also finds that Plaintiff premises his claims on the inappropriate exercise of Defendants' job functions as part of the Fund. *See id.* For example, he claims that Allen forced open the door to Plaintiff's locked office when Plaintiff was not present and when Allen did not have permission to enter. (ECF No. 17 ¶¶ 21-25.) He also alleges that Allen trespassed on Plaintiff's property after being told several times that he was not allowed to be there and questioned Plaintiff's 14-year-old daughter without an adult present, frightening her by making her believe that Plaintiff would be arrested. (*Id.* ¶¶ 30-33.) Plaintiff also claims that Allen would intimidate, bully, and coerce people into answering his questions, telling them that, if they did not comply with his requests, they would get into legal trouble. (*Id.* ¶¶ 66-74.) Regarding McCormick, Plaintiff claims that he would purposely use wrong names on subpoenas to misguide Plaintiff and refused to release frozen funds that were for COVID-19 relief, unemployment, and tax returns. (*Id.* ¶¶ 40-48.) Plaintiff also alleges that McCormick refused him the opportunity to get an attorney

---

[7]    *See Alexander v. Hackensack Meridian Health*, Civ. No. 19-18287, 2020 WL 5810526, at *7 (D.N.J. Sept. 30, 2020) (denying the defendants' motion to dismiss on quasi-judicial immunity because the defendants failed to cite any authority extending such immunity to defendants' job functions).

to defend himself.  (*Id.* ¶ 41.)  As to Williams, Plaintiff asserts that she improperly sought to intervene in an estate matter that was over a year old and misled the court into thinking that Plaintiff acted as an attorney for the decedent when she knew that he acted as only a guardian.  (*Id.* ¶¶ 113-115.)  He claims that Defendants conspired to purposely and maliciously prosecute Plaintiff in matters completely unrelated to the Fund's purpose over a year after Plaintiff's disbarment, in violation of the limitations period.  (*Id.* ¶¶ 116-117.)

Accordingly, the Court will deny Defendants' Motion without prejudice on quasi-judicial immunity.  Defendants may re-raise this defense at a later stage.  If Defendants decide to do so, the Court directs them not only to identify the specific job functions for which they seek immunity, but they must also explicitly address the *Butz* factors as well as any implication that N.J. Ct. R. 1:28-1(f) may have on this matter.

### C.  Statute of Limitations

Defendants argue that the TAC is time-barred by the two-year statute of limitations applicable to § 1983 claims.  (ECF No. 31-1 at 33-34.)  Defendants contend that Plaintiff's § 1983 claim "relate[s]" to the Allen investigation beginning on August 26, 2021, when Allen entered his office building in Audubon and, thus, Plaintiff should have known that his claim arose on that date. (*Id*. at 34.)  "A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims."  *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).  New Jersey "mandates a two-year statute of limitations period for personal-injury torts."  *Id*. (citing N.J. Stat. Ann. § 2A:14-2).  Thus, a § 1983 claim arising in New Jersey has a two-year statute of limitations.  *Id*.

Statute of limitations is an affirmative defense that may be raised in a motion to dismiss for failure to state a claim, "but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"  *United States v. Jones*,

916 F. Supp. 383, 386 (D.N.J. 1995) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)). That is, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.* (quoting *Bethel*, 570 F.2d at 1174); *see also Diamond v. Pa. State Educ. Ass'n*, 399 F. Supp. 3d 361, 404 (W.D. Pa. 2019), *aff'd*, 972 F.3d 262 (3d Cir. 2020) ("Generally, a defense based on the statute of limitations cannot be raised with a Rule 12(b)(6) motion unless the face of the complaint reveals that the applicable statute of limitations would bar the claims."). The burden to prove a statute of limitations defense lies with the defendant. *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir. 1985).

If the defendant meets that burden, the court may still toll the statute of limitations "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Parker v. Pressler & Pressler, LLP*, 650 F. Supp. 2d 326, 338 (D.N.J. 2009) (quoting *Santos v. United States*, 559 F.3d 189, 197 (3d Cir. 2009)). The plaintiff generally bears the burden to show that the statute of limitations should be tolled. *Van Buskirk*, 760 F.2d at 487 ("Where a plaintiff seeks to establish that the statute should be tolled by fraud or equitable estoppel, however, the burden shifts to the plaintiff."); *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) ("Generally, the plaintiff bears the burden of showing that the discovery rule tolls the statute of limitations."). However, while a court "may entertain" a statute of limitations argument at the motion to dismiss stage, it should not "allocate the burden" to prove tolling "in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an

affirmative defense." *Schmidt*, 770 F.3d at 251 (citing *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) ("[L]itigants need not try to plead around defenses.")).

In addition to traditional tolling circumstances, a plaintiff may invoke the continuing violation doctrine, another "equitable exception to the timely filing requirement." *Cowell v. Palmer Twp.*, 263 F.3d 286, at 292 (3d Cir. 2001). This doctrine applies "when a defendant's conduct is part of a continuing practice." *Id.* The action is considered timely "so long as the last act evidencing the continuing practice falls within the limitations period," and, "in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Id.* The Third Circuit has held that courts should consider at least three factors when analyzing the application of this doctrine: (1) "subject matter—whether the violations constitute the same type of [conduct], tending to connect them in a continuing violation"; (2) "frequency—whether the acts are recurring or more in the nature of isolated incidents"; and (3) "degree of permanence—whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to [harm the plaintiff]." *Id.* It is the plaintiff's burden to establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." *Id.*

Here, Defendants focus their statute of limitations argument only on Allen's search of Plaintiff's office building on August 26, 2021. However, Plaintiff's claims against *all* Defendants do not arise solely from Allen's search. Indeed, Defendants make no mention of the allegations against McCormick and Williams. For example, Plaintiff alleges that after Barth, his attorney, died in February 2023, Cook, the trustee of Barth's estate, called all of Plaintiff's clients about filing claims for reimbursement against Plaintiff. (ECF No. 17 ¶¶ 51-64.) Plaintiff asserts that McCormick and Allen investigated these claims after Cook made these calls. (*Id.* ¶ 65.)

Additionally, Plaintiff alleges that Williams sought to intervene in the Vonderlieth matter in February 2024.  (*Id*. ¶ 113.)  Based on these allegations, it appears that Plaintiff's claim against McCormick and Allen is, at least in part, timely since Plaintiff filed the original Complaint in November 2023.   However, there are only a handful of specific dates pled in the TAC.  Many of the allegations against Defendants are undated.   Accordingly, the Court finds that it cannot conclusively determine, at this stage, that the two-year statute of limitations bars Plaintiff's claim against McCormick and Williams and, therefore, denies Defendants' Motion without prejudice on this ground.  *See Diamond*, 399 F. Supp. 3d at 404 (finding that because the complaint "simply indicate[d]" that the plaintiff retired and did not "say when she retired," the court could not "conclusively" determine that the applicable two-year statute of limitations would bar the plaintiff's claim "based on the face of the [complaint]").

Plaintiff does allege, however, that Allen searched his property on August 26, 2021, and that, on September 9, 2021, he filed a police report regarding that search.  (ECF No. 17 ¶¶ 8, 26.)  Plaintiff did not file the original Complaint until November 2023, over two years later.  Plaintiff argues that his claim based on these allegations, (*see id.* ¶¶ 8-28), is timely because "the continuing violation doctrine applies."   (ECF No. 32 at 9-10.)   He contends that "there are continuing violations" and that "Defendants are continuing to violate Plaintiff['s] civil rights on a daily basis." (*Id*. at 32.)  In the TAC, Plaintiff alleges that, after Barth passed away in February 2023 and Cook made calls to Plaintiff's clients, McCormick used Allen to investigate their claims.  (ECF No. 17 ¶¶ 51-65.)  In carrying out those investigations, like the August 2021 incident, Plaintiff alleges that Allen "would continue to introduce himself that he was from the Supreme Court," "would continue to flash a badge to coerce people into speaking with him," and "would frighten people into thinking that if they did not comply with him they would be in trouble with the law."  (*Id*. ¶¶ 67-68, 71.)

Prior to the start of discovery, the Court is reluctant to impose upon Plaintiff the burden to plead sufficient facts to overcome Defendants' statute of limitations affirmative defense. *See Schmidt*, 770 F.3d at 251 ("[I]t was premature for the District Court to dismiss Schmidt's complaint on statute of limitations grounds at this early stage of the litigation."). Defendants themselves acknowledge that district courts differ as to whether a continuing violation theory must be specifically pled. (ECF No. 38 at 2.) Viewing the substance of Plaintiff's allegations in the light most favorable to him, the Court determines that, at this early stage, Plaintiff may proceed with his claim against Allen. Therefore, the Court will deny without prejudice Defendants' Motion to Dismiss the TAC as barred by the statute of limitations.[8]

### D. New Jersey's Entire Controversy Doctrine

Finally, Defendants seek to dismiss Plaintiffs' claims against them based on New Jersey's entire controversy doctrine. They argue that Plaintiff brought the same claims against Allen and McCormick as he did the Fund in his third-party complaint in the pending state court action and that Plaintiff could have raised his claims against Williams in the same third-party complaint. (ECF No. 31-1 at 35-37.)

"Under New Jersey law . . . when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation." *Farzan v. J.P. Morgan Chase Bank, N.A.*, No. 19-3925, 2022 WL 17336211, at *1 (3d Cir. Nov. 30, 2022) (internal quotation marks omitted). The entire controversy doctrine provides that "non-joinder of claims or parties required to be joined . . . shall result in the preclusion of the omitted claims to the extent required." *Fields v. Thompson Printing Co.*, 363 F.3d 259, 265 (3d Cir. 2004) (cleaned up). The Third Circuit has described the

---

[8] Because the Court will permit Plaintiff's claim against Allen to proceed to discovery under the continuing violation doctrine, it need not address whether fraudulent concealment alternatively saves Plaintiff's claim against Allen.

doctrine as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997).  It "embodies the notion that 'the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.'" *Id*. at 885 (quoting *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995)).  "It is the 'commonality of facts,' rather than legal issues, parties[,] or remedies, 'that defines the scope of the controversy and implicates the joinder requirements of the entire controversy doctrine.'" *Tilbury v. Aames Home Loan*, Civ. No. 05-2033, 2005 WL 3477558, at *7 (D.N.J. Dec. 12, 2005), *aff'd*, 199 F. App'x 122 (3d Cir. 2006) (quoting *DiTrolio*, 662 A.2d at 504).

Although New Jersey's entire controversy doctrine precludes successive suits involving related claims, "[i]t does not require dismissal when multiple actions involving the same or related claims are pending simultaneously." *Rycoline Prods., Inc.*, 109 F.3d at 887 (internal quotation marks omitted).  "Whether a New Jersey court would give preclusive effect to a litigation that has not yet been concluded . . . [is a] question [that] has been squarely addressed and answered in the negative." *Id*. (citing *Kaselaan & D'Angelo Assocs., Inc. v. Soffian*, 675 A.2d 705, 708 (N.J. Super. Ct. App. Div. 1996) ("Although multiple pending actions arising out of the same or related operative facts pose some of the same dangers of fragmented and duplicative litigation that the entire controversy doctrine seeks to address, those dangers do not require the dismissal of the second filed action prior to the conclusion of the first action.")).

Here, Defendants acknowledge that "the state court action, and Khawam's Third-Party Complaint and claims against the Fund, *remains pending* and is currently in discovery through March 2025."  (ECF No. 31-1 at 15 (emphasis added).)  Because the state court action is still

pending, the Court denies Defendants' Motion seeking dismissal under New Jersey's entire controversy doctrine. *See id.*

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, and other good cause shown, Defendants' Motion to Dismiss (ECF No. 31) is **GRANTED in part** and **DENIED in part**. Plaintiff's claims against Defendants in their official capacities are **DISMISSED with prejudice**. Defendants' Motion is **DENIED** in all other respects.

An appropriate Order follows.

Dated: February 27, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE